# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

ANNA DOE,

Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE RICHARD
HALL, DETECTIVE EDDIE MARTINS, and OFFICER
GREG MARKOV,

Defendants.

-------------------------------------------------------------------------- x

**AFFIDAVIT OF ASSISTANT
CHIEF BRIAN O'NEILL IN
SUPPORT OF CITY
DEFENDANTS' MOTION
FOR A PROTECTIVE
ORDER**

18-CV-670 (ARR)(JO)

**BRIAN O'NEILL**, being duly sworn, deposes and says:

1.     I am employed by the New York City Police Department ("NYPD") and presently hold the rank of Assistant Chief. I have been employed by the NYPD since September 2, 1980. During that time, I have served in a variety of commands and assignments, including multiple investigative commands, holding each uniform rank from Police Officer through Assistant Chief. As a Lieutenant, I was assigned to the NYPD's Internal Affairs Bureau (IAB) from July of 1992 through October of 1994. My present assignment is as Executive Officer of IAB. In that capacity, I am the highest ranking uniform member of IAB and report directly to the Deputy Commissioner, Internal Affairs. I have been assigned to IAB as a Chief since March of 2014, and have held the position of Executive Officer since early 2015. As such, I am fully familiar with the facts as set forth below based on personal knowledge, the records of the NYPD and conversations had with other NYPD employees.

2.     I submit this Affidavit in support of Defendants City of New York and Gregory Markov's (collectively, "City Defendants") Motion for a Protective Order.

3.     The NYPD is comprised of numerous bureaus, one of which is IAB. IAB is dedicated to preserving integrity, which is critical to the function of the Police Department, and to fighting corruption within the NYPD. IAB detects, investigates and brings to justice the small number of New York City police officers and civilians who engage in misconduct and corruption.

4.     Open IAB investigations are not made available to the public and are not accessible to members of the Department outside of IAB, with the exception of the Police Commissioner and a small number of the Executive Staff. IAB investigations are strictly confidential, and any unauthorized release of information about ongoing IAB investigations by IAB personnel is in and of itself serious misconduct.

5.     IAB is the gateway for the receipt of all complaints against members of the NYPD, generated from both named and anonymous sources both inside and outside of the NYPD, ranging from serious allegations of criminal conduct to relatively minor administrative infractions of the Department's rules and procedures.

6.     Upon intake, IAB assigns a unique log number to every complaint. IAB then determines whether the complaint should be investigated as a corruption case ("C" case), a misconduct case ("M" case), or an outside guidelines ("OG") case. Once an allegation is assessed by IAB, it is assigned to the appropriate investigative unit within the NYPD.

7.     Corruption cases are criminal in nature, meaning they are cases that may lead to the arrest and prosecution of the subject officer, over and above Departmental discipline, if the allegations are substantiated.

8.     IAB investigators often work closely with the relevant local or federal prosecutors to investigate, arrest and ensure the prosecution of members of service who have engaged in corruption.

2

9.      As the highest ranking uniform member of IAB, I am routinely briefed on corruption cases, and have personal knowledge of many open and closed IAB investigations where IAB has used Confidential Informants ("CIs") and Undercover Officers ("UCs") as well as "whistleblowers" within the Department to further its efforts to root out corruption and misconduct within the NYPD. Using information obtained from CIs and UCs is a common investigative technique within IAB and across the Department.

10.      The NYPD maintains a Confidential Informant program, which is critical to receiving actionable intelligence from civilians, relating to criminal activity within the City, including criminal activity that may be perpetrated by members of service. CIs often interact with persons who are known criminals, including narcotics traffickers, illegal firearm dealers, and persons who seek to do physical harm to others.

11.      The NYPD goes to great lengths to keep the names of CIs confidential, as well as the true identities of UCs, in order to ensure their safety. It is self-evident that discovery or knowledge that a civilian is a CI who is providing or has provided intelligence to the NYPD can have serious safety consequences for such CI. Even following the conclusion of an investigation, the threat of discovery and retaliation against a CI remain a serious concern. In fact, CI names are even concealed from other members of the NYPD and are only revealed on a 'need to know' basis.

12.      Upon information and belief, in the course of criminal prosecutions, judges may hold hearings to verify the credibility of a CI and protect his/her identity from disclosure, even to the defendant.

13.      If a CI knew that his or her identity could be intentionally or even inadvertently disclosed, even to attorneys, in the context of a civil lawsuit, whether or not that

lawsuit overlaps in any way with information provided by the CI to the NYPD, there would be an enormous detrimental effect on the willingness of others to serve as CIs.

14.     In the matter at hand, the subject(s) of the information provided by one or more CI(s) was/were member(s) of the NYPD at the time of the alleged criminal conduct. The CI(s)' life and safety could be threatened or compromised if his/her/their identity and/or status as an informant were revealed to anyone.

15.     Disclosure of open and active IAB files to the subject member(s) of service, or to anyone else, prior to a criminal or administrative proceeding deprives IAB of any tactical advantage in the continuing investigation.  Simply, the subject officer(s) could learn the identities of witnesses, evade or detect surveillance, anticipate integrity testing, hide or destroy evidence that could be subject to subpoena, and otherwise compromise the integrity of the ongoing investigation. Disclosure of IAB's tactics and strategies in an ongoing criminal investigation would allow officers inclined to engage in corruption, or already engaged in corruption, to make assessments of the strengths and limitations of information and techniques available to IAB.

16.     For these reasons, the position of the NYPD is that this information should be maintained confidentially and not be disclosed except as absolutely necessary for the purposes of law enforcement.

17.     Upon information and belief, the plaintiff in this case seeks the disclosure of an open and active IAB investigation, to both plaintiff and the subject officer or officers, which contains confidential information that would certainly reveal the identity of the CI(s).

18.     I provide the information in the following paragraphs to the Court with the understanding that this information will remain under seal, and in the hope that it will not be made available to any person or entity outside of the Court.

4





25.      The disclosure of this identity-revealing information would certainly allow plaintiff and co-defendants, and anyone with whom plaintiff and co-defendants associates with, to determine who provided information against one or more defendant former officers, and thereby jeopardize the CI(s)' safety. Accordingly, the disclosure of this information would be detrimental to the CI(s) and to law enforcement in general.

26.      IAB has been working with the Kings County District Attorney to investigate this matter. The production of information regarding these allegations while the investigation is ongoing could place the prosecution of crimes at risk.

27.      In conclusion, IAB is of the view that the potential danger to CI(s) as a result of disclosure of his/her/their identity is significant, and the production of information regarding an open investigation to any party to this civil lawsuit and/or their attorney(s) would negatively impact IAB's mission of fighting corruption within the NYPD.

BRIAN O'NEILL

Sworn to before me this

16th day of October, 2018.

Notary Public

JACQUELINE B. LIBSTER
NOTARY PUBLIC-STATE OF NEW YORK
No. 02LI6070747
Qualified in New York County
My Commission Expires 05-26-2022

6